**People of the State of Illinois, Plaintiff-Appellant, v. Joseph Mikrut, Defendant-Appellee.**

Gen. No. 69–93.

Second District.

December 11, 1969.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Ralph J. Gust, Jr., Assistant State's Attorney, for appellant.

Edwin L. Douglas, Public Defender, of Wheaton, and Kevin P. Connelly, Deputy Public Defender, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The People have appealed from an order discharging defendant, Joseph Mikrut, from custody pursuant to a

motion by defendant charging denial of a speedy trial under the provisions of Ill Rev Stats 1967, c 38, § 103–5.

On October 25, 1968, defendant was arrested in Cook County on charges of possession of burglary tools and driving with license suspended, and held in the Cook County jail. On or about the same date, the Elmhurst (DuPage County) police department placed a complaint and warrant specifying bond at $10,000, with the Cook County jail, charging defendant with burglary in Du Page County. The complaint and warrant were not served upon defendant. He was told, however, on October 29th, by Cook County authorities that they had a "hold" on him from DuPage County.

Bond on the Cook County charges was eventually reduced to $1,000 but defendant did not make bond.

On November 11th or 12th defendant appeared before the court on the Cook County charges and, represented by the public defender, agreed to a continuance until February 11th, 1969.

Defendant was brought before the court in DuPage County for the first time on January 10th, 1969, when he was served with an indictment returned by the Du Page County Grand Jury on December 19th, 1968. He was arraigned on the DuPage County charges on January 17th, 1969, and, after appointment of the public defender, the matter was set for motions and for trial setting on February 3rd, 1969. On that date the matter was set for trial on March 3rd, at which time defendant raised the 120-day rule regarding the DuPage County charge.

The provisions of section 103–5(a), supra, as material here, are:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was

taken into custody unless delay is occasioned by the defendant . . . ."

The issue raised by the appeal is whether the 120-day rule began to run on the date the DuPage burglary complaint and warrant was placed with Cook County but was not served on defendant, who was being held on a separate Cook County charge; or whether said rule instead began to run on the date defendant was first brought to DuPage County and served with the DuPage indictment. Defendant takes the position that the 120 days begin to run from the time he was in custody anywhere in the state on multiple charges pending in several counties. The People argue that the defendant was not in custody for *"an alleged offense,"* under the circumstances here, until he was served with the Du Page County indictment. Alternatively, the People contend that if the lodging of the complaint and warrant with Cook County is to be considered to have placed defendant in custody for the alleged offense in DuPage County, defendant suspended the operation of the 120-day rule by agreeing to a continuance of the Cook County case until February 11th, 1969, so that the 120-day period would not run on either charge until February 11th, 1969.

A similar issue was decided in People v. Clark, 104 Ill App2d 12, 244 NE2d 842 (1969), relied upon by the People.[1] In Clark the accused was arrested by Rock Island police on January 14th, 1967, after he had driven from Peoria County to Rock Island County where he had attempted to negotiate some forged checks. On January 15th, 1967, before any formal action was taken, the

---

[1] Defendant concedes the case to be in point on the facts but denies that the case properly interprets the present 120-day statute. It appears from oral argument that the opinion in the Clark case may have been published subsequent to the trial court's ruling here.

Rock Island police department turned the defendant over to the sheriff of Peoria County, where defendant was under indictment for armed robbery. However, Rock Island requested he be held for later prosecution in their county. On February 17th, 1967, an indictment was returned by the Rock Island Grand Jury charging defendant with forgery, and a bench warrant was issued but was not served on the defendant. Defendant was to be tried in Peoria County on March 27th, 1967 for armed robbery, and on that date the Rock Island state's attorney sent a copy of the bench warrant to the Peoria sheriff intending it as a detainer warrant. On April 19th the defendant was returned to Rock Island County and the next day he was arraigned on the Rock Island charge. On April 25th the defendant filed a motion for a bill of particulars. On May 23rd, the 129th day after his arrest, the defendant filed a motion for a discharge on the basis of the 120-day rule.

The court in deciding when the 120 days started to toll held that April 19th, 1967, the date the defendant was returned to Rock Island County after termination of proceedings in Peoria County, was the controlling date and not the date the warrant was lodged with Peoria County as a detainer warrant.

In Clark the court indicates (at page 17) that with no previous decision construing section 103–5(a), supra, or its antecedent, (Ill Rev Stats 1961, c 38, § 748), under similar facts, its course is charted by The People v. Jones, 33 Ill2d 357, 211 NE2d 261 (1965) and The People v. Stillwagon, 373 Ill 211, 25 NE2d 795 (1940).

In Jones the supreme court held that under the previous statute (section 748, supra, which in substance is the same as the present section 103–5(a), supra, except that it applies to "any person *committed* for a criminal or supposed criminal offense" (emphasis ours)), defendants were not entitled to discharge when com-

447

plaints for robbery and assault were lodged while defendants were being held in the same county for unrelated offenses. The court held that the fourth month period after "commitment" did not begin to run until defendant was incarcerated on the charges contained in the indictment; and that, on the record, defendants were not "committed" on any date prior to the return of the indictment.

Defendant urges that the Jones case turns on the use of the word "committed" in the former statute, in place of "custody" as that word is now found in the present 120-day statute. We agree with the opinion in People v. Clark, supra, (at page 18) however, that this does not provoke a different construction. "Custody" and "commitment" are both terms which have commonly been used interchangeably to characterize actual "imprisonment," or "incarceration," or "confinement." See The People v. Moriarity, 33 Ill2d 606, 609, 213 NE2d 516 (1966); The People v. Stillwagon, supra, at page 213; The People v. Emblen, 362 Ill 142, 145, 190 NE 281 (1935).

The People v. Stillwagon, supra, concerned a defendant who was involved in a holdup in Lake County on August 18th, 1936. The proceeds of the robbery were transported into Cook County, where the defendant was arrested and held in custody until November 18th. On November 18th, the Cook County indictment for larceny was stricken and defendant was surrendered by Cook County to the Lake County authorities. Defendant remained in jail until February 8th, 1937, when he was tried for the Lake County robbery. The defendant argued that the 120 days should run from the date of the original arrest by Cook County, but the court held that the only court competent to try defendant for robbery was the circuit court of Lake County with jurisdiction of the offense; and since the one court having jurisdiction tried defendant within four months of the date of

his commitment, his right to a speedy trial was not invaded.

Defendant argues that Stillwagon has, in effect, been overruled by The People v. Patheal, 27 Ill2d 269, 189 NE 2d 309 (1963). In that case Patheal was arrested for armed robbery in Coles County while on parole from the penitentiary on a previous felony. He was kept in the Coles County jail on the basis of a complaint and warrant from August 20th, 1959, until December 11th, 1959, when he was delivered to a state parole agent under a warrant charging parole violation, and taken to the penitentiary at Menard. On December 15th, 1959, the Coles County Grand Jury indicted Patheal for the same offense of armed robbery charged in the Coles County complaint and warrant. This was served on Patheal when he was released from the penitentiary on January 21st, 1960, and he remained in custody of the Coles County sheriff until February 23rd, when he filed his motion for discharge. The court refused to hold that Coles County did not have jurisdiction because of the technicality that, as a parolee, defendant was technically within the custody of the department of public safety. The court emphasized that defendant was arrested and confined in the Coles County jail upon their charge for a period just 9 days short of the four months, when he was returned to the department of public safety, and that this period could not be disregarded. They held that it would be added to the later time spent in the Coles County jail and considered as one period of incarceration.

The People suggest that Patheal does not conflict with Stillwagon (to which it does not expressly refer), in that Stillwagon involved no initial arrest and custody for the particular charge involved. In People v. Clark, supra, (at page 22) the court, we think properly, points out that The People v. Patheal belongs to that class of cases which hold that when authorities learn of an accused being in the penitentiary, they must take af-

449

firmative action to prosecute within the statutory time period, as no obstacle exists to bringing such defendant back for trial (e. g. People v. Gray, 83 Ill App2d 262, 227 NE2d 159 (1967); The People v. Bryarly, 23 Ill2d 313, 178 NE2d 326 (1961); The People v. Patheal, supra, and The People v. Swartz, 21 Ill2d 277, 171 NE2d 784 (1961)).

Defendant argues that for all practical purposes he was in custody under the DuPage County complaint and warrant when it was "lodged" with the Cook County jail authorities even though not physically handed to him. He argues that since he was notified of the charge and the bond fixed, for practical purposes he could consider himself to be in custody as even if he had made the bond in Cook County he would still be facing the bond in DuPage County before he could be released.

■ The practice of placing formal requests for notification of a prisoner's release date, sometimes characterized as "hold orders" or "detainers," is without any legal sanction in Illinois as far as we have been able to determine. The practice appears to be a matter of voluntary cooperation between authorities. Here the sending of the complaint and warrant to the Cook County jail authorities operated as a request to hold defendant on the DuPage County charge if defendant was released on the Cook County charge. But without actual service of process on the defendant (or an arrest without a warrant), we know of no theory on which it may be said that defendant was "in custody" on the DuPage County charge by reason of the detainer practice. While the unrestrained use of detainers has been criticized when indictments are relayed until *time is served on a different charge,* the problem is not the same when a defendant is merely waiting trial, with knowledge that he may face another trial in some other place upon termination of the proceedings and, that too, must be a "speedy trial."

(See Detainer and Speedy Trial, 31 U of Chi L Rev 535, 537–9.)

Both parties have noted the provisions of Ill Rev Stats 1967, c 38, § 103–5(e) which in effect give the prosecution an additional 120 days from the end of a trial on one charge to try all remaining charges pending in the same county. The People argue that it would be anomalous for the legislature to intend that there be an additional period for multiple charges pending in a single county, but that as to charges pending in a different county only the one 120-day period-tolling at the same time in each county wherein multiple charges pend. Defendant suggests that the purpose of this section was to encourage "plea bargaining" on multiple charges pending in a county. The People, and we think logically, counter that the same opportunity for "plea bargaining" is present when multiple charges pend in different counties.

There is some merit in the argument that detention in any county is for the benefit of the state as a whole, and that some single period should be designated by the legislature as an implementation of a speedy trial to prevent the possibility of harassment of an accused who faces multiple charges in different counties. We cannot find, however, that the legislature has made this determination in the statute here involved.

■■■ We believe that People v. Clark, supra, was correctly decided. We find that defendant was not placed "in custody" on the DuPage County charge on the date the complaint and warrant were "lodged" with the Cook County jail authorities. Under our interpretation of the statute, the 120-day period began to run at the time when DuPage County authorities took defendant from the Cook County jail on the basis of the complaint and warrant. At that time he was "in custody" on the DuPage County charge.

■

In the view we have taken, we do not reach the alternative issue of whether defendant waived a speedy hearing on all charges by requesting a continuance as to the Cook County charges.

We, therefore, reverse and remand.

Reversed and remanded.

MORAN and ABRAHAMSON, JJ., concur.