THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ROY M. WENTLENT, JR., Defendant-Appellee.

Second District   No. 81—679

Opinion filed September 10, 1982.—Rehearing denied October 20, 1982.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

G. Joseph Weller and Joel Tiebloom, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The State appeals from an order of the circuit court of Du Page County dismissing criminal charges against defendant, Roy M. Wentlent, Jr., for failure to comply with the 120-day speedy trial provision of section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a)). On appeal, the State contends that (1) the decision of the trial court was against the manifest weight of the evidence, and (2) the trial court erred in applying section 103—5(a) to the instant case.

On October 22, 1980, defendant was charged by complaint issued in Du Page County with the offense of felony theft. A warrant for defendant's arrest was also issued the same day. On February 14, 1981, defendant was arrested in Cook County on charges arising there and was incarcerated in the Cook County jail. The charges in Cook County were subsequently dropped on March 19, 1981, and on March 20, 1981, defendant was remanded to the Joliet Correctional Center to serve a six-month term of imprisonment for an unrelated parole violation.

On April 21, 1981, the Joliet Correctional Center acknowledged receipt of a Du Page County detainer for the instant offense. There was no indication on what date the detainer had been issued by Du Page County. On April 28, 1981, the defendant filed a notice and request for the disposition of the Du Page County charge in conformity with section 3—8—10 of the Unified Code of Corrections. Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—10.

Pursuant to a writ of *habeas corpus ad prosequendum*, the

defendant was brought before the court in Du Page County on May 29, 1981. The case was continued to July 10, 1981, and on that date the State filed a two-count information charging the defendant with theft. The case was set for trial on August 10, 1981.

On the day of trial the defendant moved for discharge under section 103—5(a) on the ground that he had not been brought to trial within 120 days of March 19, 1981, the day when the Cook County charges had been dropped. Defendant claimed that a Du Page County "detainer" had been lodged against him on March 9, 1981, while he was incarcerated in the Cook County jail. Therefore, he argued, he was "in custody" for Du Page County when the Cook County proceedings terminated, and the 120-day limitation period of section 103—5(a) of the Code of Criminal Procedure of 1963 had expired. (Elapsed time between March 19 and the August 10 trial date = 144 days.)

The State, on the other hand, argued that no Du Page County detainer had lodged against defendant until after he was committed to the Joliet Correctional Center. Since defendant was "committed" to a Department of Corrections, the State reasoned the 160-day limitation of section 3—8—10 applied and the speedy trial term did not begin to run until defendant demanded a speedy trial on April 28, 1981. Under this theory, the trial date was well within the 160-day limitation. (Elapsed time between April 28 and August 10 = 104 days.)

The evidence regarding the date and place of service of the complaint and arrest warrant is conflicting. The defendant testified he was served in open court with the Du Page County complaint and warrant on March 9, 1981, as he was appearing on the Cook County charge. Defendant later testified he was unsure of the exact date of service and that no papers were handed to him in court. He also stated that he had no copies of any papers that were handed to him at that time. Defendant stated that to the best of his knowledge he was sent to Joliet on March 20, 1981, to serve a six-month term for parole violation.

The complaint itself indicates that a March 9, 1981, service date was crossed out and replaced with the date of May 28, 1981. On the signature line of the complaint, the name "Detective Paul Sarch" was also lined out, and the name "G. Figiel" appears above it. The arrest warrant indicates that it was served on the defendant on May 29, 1981, by Officer Figiel. Unlike the complaint, the arrest warrant contains no irregularities on its face.

Mary Kloeckner, an assistant in the warrant division of the Du Page County Sheriff's Office, testified for the State. Ms. Kloeckner

testified that all complaints, warrants, and all detainers which are to be filed in other counties go through the sheriff's office and according to their records no detainer or hold had been placed against the defendant in Cook County. She stated that the only detainer on file in connection with the defendant was the one acknowledged by the Joliet Correctional Center on April 21, 1981. She did not indicate the date the detainer had been issued. The detainer itself was not produced at the hearing. The witness testified that according to the sheriff's records, the original complaint and warrant were served on the defendant on May 29, 1981, by Officer Figiel.

Gregg Figiel also testified for the State. He testified that on May 29, 1981, he served the defendant with the complaint and arrest warrant. Deputy Figiel stated that the May 28 date on the complaint was not in his handwriting, but the signature was his. He noted that the May 28 service date on the complaint was incorrect, since it was not served until May 29, 1981. He recalled serving the defendant with the yellow copy of the complaint and testified that if defendant had been served on March 9, 1981, no yellow copy would have been available for service on May 29, 1981.

In a side bar, defense counsel informed the court that the defendant claimed to have the yellow copy of the complaint, dated March 9, 1981, among his papers at the penitentiary. However, this copy was never produced by defense counsel for the court's inspection, and is not a part of the record on appeal.

The trial court found that defendant was "served with process" on March 9, 1981, while he was incarcerated in Cook County, that a detainer became effective on that date, and that the defendant was in custody for the instant offense upon termination of the Cook County proceedings. In accordance with these findings, the court discharged the defendant pursuant to the speedy trial provisions of section 103–5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103–5(a)).

The State initially contends the trial court's finding that defendant was "served with process" on March 9, 1981, rather than on May 29, 1981, was against the manifest weight of the evidence. We note at this juncture that the trial court did not specify what it meant by "service of process." We will assume, therefore, that it found defendant was served with both the complaint and warrant on that date.

■ Reviewing courts will not reverse a trial court's determination of questions of fact unless such determination is found to rest on doubtful, improbable or unsatisfactory evidence. (*People v. Powell* (1978), 72 Ill. 2d 50, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S.

907, 59 L. Ed. 2d 455, 99 S. Ct. 1214.) We believe the trial court's finding that defendant was served with a Du Page County complaint on March 9, 1981, was supported by the record. The fact that the complaint itself shows a discrepancy with respect to the service date is sufficient to support this finding.

■ We do not, however, arrive at the same conclusion with regard to service of the arrest warrant. The warrant on its face unequivocally states it was served by Officer Figiel on May 29, 1981. Both State's witnesses testified it was served on that date. The only evidence in the record which supports the trial court's finding in this regard was defendant's affirmative response to his counsel's leading question that he was served with a complaint and warrant in Cook County on March 9, 1981. However, defendant later responded that no papers were handed to him in court, and that he had no copies of any documents that were handed to him; nor could he remember the precise date on which he was allegedly served. No duplicate of the warrant was ever produced to rebut the unequivocal document filed with the court. We note that in making its findings the trial court relied upon corroboration supposedly contained in the common law record. The common law record does not, however, corroborate that the arrest warrant was served on March 9, 1981. Further, there is no evidence to support an inference that the complaint and arrest warrant were served at the same time. Under these circumstances, we believe the trial court's finding that defendant was served with an arrest warrant was against the manifest weight of the evidence.

Having determined that defendant was served with a Du Page County complaint, but not an arrest warrant, on March 9, 1981, while he was incarcerated in Cook County, we must next determine (1) which speedy trial provision applies here, and (2) from which date the speedy trial period began to run.

Section 103—5 provides in pertinent part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody ***.

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial ***.

* * *

(d) Every person not tried in accordance with subsections (a), (b) and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance." Ill. Rev. Stat. 1981, ch. 38, par. 103—5.

Section 3—8—10, regarding intrastate detainers, incorporates section 103—5(b) in the following provision:

> "Except for persons sentenced to death, subsection (b), (c) and (e) of Section 103—5 of the Code of Criminal Procedure of 1963 shall also apply to persons committed to any institution or facility or program of the Illinois Department of Corrections who have untried complaints, charges or indictments pending in any county of this State ***." Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—10.

Defendant essentially relies on *People v. Woodruff* (1980), 90 Ill. App. 3d 236, 412 N.E.2d 1171, to support his position that he was "in custody" on the Du Page charge prior to his commitment to the Joliet Correctional Center. He, therefore, urges us to apply to the instant case the provisions of section 103—5(a) rather than those of section 3—8—10.

In *Woodruff*, the defendant was incarcerated in a Macon County juvenile detention center pending his transfer to the Department of Corrections, Juvenile Division, in St. Charles. Just prior to his transfer, on June 28, 1979, defendant was served with the summons for several Macon County offenses. Defendant was subsequently transferred to St. Charles on July 2, 1979, and on July 23, 1979, the State filed a writ of *habeas corpus* which was served on defendant. Defendant was not tried on the Macon County charges until November 19, 1979, 144 days after service of the summons. The defendant moved for discharge under section 103—5(a), and the parties stipulated defendant was in custody on the date service of the summons was made. The trial court denied the motion, however, finding defendant was not in custody for these offenses until the writ of *habeas corpus* was filed on July 23, 1979 (119 days prior to trial). In reversing the trial court's order, the appellate court noted defendant was already in custody for a previous conviction in Macon County when he was charged with the offenses involved. It further found that the service of the summons effectively began the case and, therefore, the speedy trial term began to run from that date (June 28). Since defendant's trial was held more than 120 days from June 28, he was entitled to discharge under section 103—5(a).

We believe the *Woodruff* case is readily distinguishable from the case at bar. The court there expressly limited its holding to those cases involving more than one set of charges in the same county, rather than the involvement of more than one county. (See *People v. Arbuckle* (1964), 31 Ill. 2d 163, 201 N.E.2d 102, *cert. denied* (1965), 380 U.S. 945, 13 L. Ed. 2d 964, 85 S. Ct. 1029.) Further, when a

defendant is confined in one county *following conviction,* some prosecutorial action is generally required before the speedy trial period will commence. (*People v. Smith* (1976), 42 Ill. App. 3d 731, 356 N.E.2d 656 (*dicta*); *People v. Arbuckle.*) Thus, the service of the summons in *Woodruff* was sufficient. Where, however, defendant is in custody *awaiting trial* in one county and charges are pending against him in another county, then a different rule applies. In that situation, the 120-day period does not begin to run until the proceedings in the first county end and defendant is held in custody by or for the second county on the subject charges. (*People v. Evans* (1979), 75 Ill. App. 3d 949, 394 N.E.2d 710; *People v. Kerley* (1979), 72 Ill. App. 3d 916, 391 N.E.2d 225; *People v. Karr* (1979), 68 Ill. App. 3d 1040, 386 N.E.2d 927; *People v. Clark* (1968), 104 Ill. App. 2d 12, 244 N.E.2d 842.) Finally, where following conviction a defendant is commited to the Department of Corrections (as opposed to a county jail), and a charge is pending against him in any county in the State, a still different class of case controls. In that situation, section 3—8—10 governs, and the 160-day speedy trial term does not begin to run until defendant files his speedy trial demand. (*People v. Davis* (1981), 92 Ill. App. 3d 869, 416 N.E.2d 85; *People v. Bivens* (1976), 43 Ill. App. 3d 79, 356 N.E.2d 665; *People v. Smith* (1976), 42 Ill. App. 3d 731, 356 N.E.2d 656.) For the reasons set forth below, we are unable to conclude, as the *Woodruff* court did, that defendant here was "in custody" for the Du Page charge prior to his commitment to the Department of Corrections.

Defendant in the case at bar was incarcerated in Cook County awaiting trial, and was, therefore, subject to the rule that he cannot be in custody for the second county until the proceedings in the first county have ended and he is either held by or for the second county on the subject charges. (*People v. Clark* (1968), 104 Ill. App. 2d 12, 244 N.E.2d 842.) Thus, a defendant cannot be in the custody of the second county until the first proceedings have ended, even where a defendant is served with a warrant while incarcerated in the first county (*People v. Gardner* (1982), 105 Ill. App. 3d 103, 433 N.E.2d 1318), where a "hold" or "detainer" is lodged against him while incarcerated in the first county (*People v. Kerley* (1979), 72 Ill. App. 3d 916, 391 N.E.2d 225; *People v. Mikrut* (1969), 117 Ill. App. 2d 444, 253 N.E.2d 556), or where defendant is brought before the court in the second county, but then is returned again to the custody of the first county. *People v. Gardner; People v. Evans* (1979), 75 Ill. App. 3d 949, 394 N.E.2d 710.

Further, it has been held that where a defendant is not served with a complaint and arrest warrant prior to the termination

of court proceedings in the first county, he is not deemed to be "in custody" for the second county even upon termination of the first action. (*People v. Mikrut* (1969), 117 Ill. App. 2d 444, 253 N.E.2d 556.) In *Mikrut* a defendant who had a "hold" order placed upon him while he was incarcerated in another county, but who had not been served with the complaint and warrant, was deemed not to be in the custody of the second county. The court stated:

> "The practice of placing formal requests for notification of a prisoner's release date, sometimes characterized as 'hold orders' or 'detainers,' is without any legal sanction in Illinois as far as we have been able to determine. The practice appears to be a matter of voluntary cooperation between authorities. Here the sending of the complaint and warrant to the Cook County jail authorities operated as a request to hold defendant on the DuPage County charge if defendant was released on the Cook County charge. *But without actual service of process on the defendant (or an arrest without a warrant)*, we know of no theory on which it may be said that defendant was 'in custody' on the DuPage County charge by reason of the detainer practice." (Emphasis added.) 117 Ill. App. 2d 444, 450, 253 N.E.2d 556, 559. See also *People v. Akins* (1971), 132 Ill. App. 2d 1033, 270 N.E.2d 107.

■ We have already determined that defendant was not served with an arrest warrant on the instant offense during his incarceration in Cook County. Nor does it appear from the record that he was arrested without a warrant on the Du Page charge, since he was subsequently remanded to Joliet on an unrelated charge. We do not consider the service of a complaint without a warrant sufficient to render defendant "in custody" upon termination of the Cook County proceedings. A complaint merely serves to institute an action and does not command any official to seize or retain the person of the defendant. We are directed to no case in which the service of the complaint alone is treated as the equivalent of the service of an arrest warrant under the circumstances here. Moreover, neither Cook County nor Du Page County officials took any action upon the previously issued, but unserved, warrant when defendant was released from Cook County. (See *People v. Akins* (1971), 132 Ill. App. 2d 1033, 270 N.E.2d 107; *People v. Mikrut* (1969), 117 Ill. App. 2d 444, 253 N.E.2d 556.) The mere fact that defendant here was held over one day by Cook County officials before his transfer to Joliet is insufficient to find that the holdover was pursuant to the Du Page County charge. It would be more logical to assume that the holdover was pursuant to the unrelated pa-

role violation rather than the Du Page offense. Thus, we conclude that defendant was not "in custody" under section 103—5(a) for the instant offense upon termination of the Cook County proceedings. See also *People v. Karr* (1979), 68 Ill. App. 3d 1040, 386 N.E.2d 927.

■ We further conclude that the provisions of section 3—8—10 are applicable to the case at bar. Defendant does not assert he was not a person committed to the Department of Corrections within the meaning of section 3—8—10. Instead he states the statute is not applicable to his circumstances. A plain reading of the statute discloses that the requirement imposed by section 103—5(b), the necessity for demanding trial, applies to persons in custody of the Department of Corrections. On March 20, 1981, defendant was a person committed to the custody of the Department of Corrections having an untried theft charge pending against him in Du Page County. He was, therefore, required to make a demand for trial before the 160-day period under that section would begin to run. (*People v. Freeland* (1981), 103 Ill. App. 3d 94, 430 N.E.2d 277; *People v. Davis* (1981), 92 Ill. App. 3d 869, 416 N.E.2d 85.) On April 28, 1981, defendant did make such a demand and it was on that date that the speedy-trial term commenced under section 3—8—10. Since the August 10 trial date was well within the 160-day limitation, defendant was not denied his statutory right to a speedy trial.

We are mindful of that line of cases in which it is held that the prosecutor has a duty to bring a defendant to trial within 120 days of the date he discovers, or should have discovered, defendant's whereabouts and no other bar to prosecution exists. (See *People v. Powell* (1976), 43 Ill. App. 3d 934, 357 N.E.2d 725; *People v. Vaughn* (1972), 4 Ill. App. 3d 51, 280 N.E.2d 253; *People v. Gray* (1967), 83 Ill. App. 2d 262, 227 N.E.2d 159; *People v. Fosdick* (1967), 36 Ill. 2d 524, 224 N.E.2d 242.) However, we do not find these cases to be applicable here. We note that this rule was developed prior to the enactment of section 3—8—10 to avoid the delay of trial by the State when the State knew of an accused's whereabouts in the penitentiary or county jail. Section 3—8—10, however, represents a legislative decision to impose upon a defendant committed to a Department of the State, the burden of demanding a speedy trial. (See *People v. Bivens* (1976), 43 Ill. App. 3d 79, 356 N.E.2d 665; *People v. Smith* (1976), 42 Ill. App. 3d 731, 356 N.E. 656.) Further, in *People v. Davis* (1981), 92 Ill. App. 3d 869, 416 N.E.2d 85, 87, this court stated that section 3—8—10 applies even where the defendant's whereabouts are known to the authorities in the courts where the charge is pending. Thus, the fact that Du Page authorities knew, or should have known, of defendant's

whereabouts in Joliet as of March 19, 1981, is of no significance here.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and this cause remanded for further proceedings.

Reversed and remanded.

SEIDENFELD, P. J., and NASH, J., concur.