2016 IL App (3d) 140235

Opinion filed June 9, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-14-0235 |
| v. | ) | Circuit No. 12-CF-309 |
| | ) | |
| RICKEY D. SMITH, | ) ) | Honorable David A. Brown, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant, Rickey D. Smith, appeals his aggravated criminal sexual abuse conviction arguing that the trial court erred in denying his motion to dismiss for violation of his speedy trial rights. We reverse and remand with directions for the trial court to vacate its order denying the motion to dismiss and to enter judgment dismissing the charges.

¶ 2                                                  FACTS

¶ 3       On March 20, 2012, defendant was charged by indictment with two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2010)) in Peoria County. An arrest warrant was ordered that same day, which listed defendant's location as the Sangamon County jail in

Springfield, Illinois. He was being held in the Sangamon County jail while awaiting trial for a separate charge of aggravated criminal sexual abuse. On June 24, 2012, defendant was served with the arrest warrant while in the Sangamon County jail.[1] On July 11, 2012, Peoria County sent a message to Sangamon County regarding defendant which stated, "Please place a hold for [Peoria County]." On June 11, 2013, defendant was sentenced on the Sangamon County offense to four years' in the Department of Corrections (DOC). He was transferred to the DOC 31 days later on July 12, 2013.

¶ 4    On July 17, 2013, a Peoria County judge issued an order for *habeas corpus ad prosequendum* directing the DOC to transport defendant to court on August 8, 2013. Defendant was arraigned in Peoria County on August 8, 2013, and the case was set for pretrial on September 13, 2013, and trial on September 23, 2013.

¶ 5    On September 13, 2013, the State asked for a continuance, to which defendant objected and presented himself as ready for trial. Over defendant's objection, the court struck the September 23, 2013, trial date and set the case for trial on October 28, 2013. At a pretrial on October 18, 2013, defendant indicated he was going to file a motion to dismiss based on a speedy trial violation, which he did on October 24, 2013. After taking the matter under advisement, the trial court denied the motion to dismiss. The court reasoned that the intrastate detainer statute of the Unified Code of Corrections (Act) (730 ILCS 5/3-8-10 (West 2012)) applied; and therefore, the speedy trial time was 160 days and defendant was required to make a speedy trial demand in order to start the speedy trial clock.

---

[1]Although the record is unclear about the exact date the warrant was served, both parties accept June 24, 2012, as the date of service.

¶ 6        Defendant, proceeding *pro se*, filed a motion to reconsider dismissal for a speedy trial violation on November 15, 2013. The State responded, and included a fax from the Sangamon County sheriff's office that indicated that defendant was not being held for Peoria County, but that there was a delay in receiving the judgment and sentence from the Sangamon County court. The motion to reconsider was denied. The court determined that the fact that defendant had been held in Sangamon County before being transported to the DOC did not mean he was being held for Peoria County. Defendant "was committed" to the DOC upon termination of the Sangamon County proceedings.

¶ 7        On December 11, 2013, after a jury trial, defendant was found guilty of both counts of aggravated criminal sexual abuse. He was subsequently sentenced to concurrent sentences of seven years' incarceration to run concurrent with the sentence for the Sangamon County offense.

¶ 8                                ANALYSIS

¶ 9        On appeal, defendant contends that he was denied his statutory right to a speedy trial as: (1) he was served with a Peoria County arrest warrant in this case while he was awaiting trial in Sangamon County on another charge; (2) he was held in the Sangamon County jail for 31 days after he was sentenced on the Sangamon County case; and (3) over 120 days passed from the termination of proceedings in Sangamon County to the date he filed his motion to dismiss.

¶ 10       Defendant recognizes that, though he filed a motion to dismiss for a speedy trial violation and a motion to reconsider the dismissal of the motion, he failed to file a posttrial motion, and the issue has not been preserved for appeal. See *People v. McCarty*, 223 Ill. 2d 109, 122 (2006) ("[T]he failure to raise an issue in a posttrial motion results in the forfeiture of that issue on appeal."). However, we accept defendant's request to consider his argument under the plain error doctrine. See *People v. McKinney*, 2011 IL App (1st) 100317, ¶ 29 (where a defendant failed to

properly preserve a speedy trial issue for review, "it is subject to plain error review because a speedy trial implicates fundamental constitutional concerns.").

¶ 11 We review forfeited errors under the plain error doctrine in two instances: "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Belknap*, 2014 IL 117094, ¶ 48. However, when reviewing a case under the plain error doctrine, the first step is determining whether any error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). We begin our examination of the potential error with a review of the applicable speedy trial authority.

¶ 12 Both the United States Constitution and the Illinois Constitution guarantee the right to a speedy trial for anyone accused of a crime. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The Illinois speedy trial statute enforces this constitutional right, and its protections are to be liberally construed in favor of the defendant. *People v. Buford*, 374 Ill. App. 3d 369 (2007). Section 103-5(a) of the speedy trial statute states, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(a) (West 2012). It does not require a defendant to file a demand to exercise his or her speedy trial rights. See *id.*; *People v. Zeleny*, 396 Ill. App. 3d 917, 920 (2009). However, under section 103-5(b) of the speedy trial statute any person on bail or recognizance must be tried within 160 days from the date that the defendant demands trial. 725 ILCS 5/103-5(b) (West 2012). The IDA further applies the 160-day time period and trial demand requirement to "persons committed to

any institution or facility or program of the [DOC] who have untried complaints, charges or indictments pending in any county of this State." 730 ILCS 5/3-8-10 (West 2012). "Proof of a violation of the statutory right requires only that the defendant has not been tried within the period set by statute and that defendant has not caused or contributed to the delays." *People v. Staten*, 159 Ill. 2d 419, 426 (1994).

¶ 13    We first must determine which of the above speedy trial provisions applies in the instant case (section 103-5(a) or section 103-5(b) through application of the IDA). The answer to this question derives from whether defendant was in the custody of the DOC, Peoria County, or Sangamon County.

¶ 14    At the outset, we reject the State's reliance on *People v. Williams*, 239 Ill. 2d 503, 508 (2011), for the proposition that a defendant is in the legal custody of the DOC upon the entry of judgment on his conviction and sentence. The State concludes that defendant would have been in the custody of the DOC as soon as he was sentenced and the 160-day period would have applied after defendant submitted a written speedy trial demand. However, *Williams* does not deal with a speedy trial issue. See *id.* The Illinois Supreme Court specifically stated that it was considering the "narrow question of whether the day of a defendant's commitment to the [DOC] should be counted by the circuit court in its calculation of presentence credit or counted by the [DOC] as the first day of sentence." *Id.* at 504. It also stated that the plain language of section 5-4.5-100 of the Unified Code of Corrections (730 ILCS 5/5-4.5-100 (West 2012)) compelled the holding, and that the Code of Criminal Procedure of 1963 (725 ILCS 5/100-1 *et seq.* (West 2012)) was an entirely different code that was not at issue. *Id.* at 510. Therefore, *Williams* does not apply in this case.

¶ 15    Instead, we must examine how Illinois case law has defined "custody" in the context of the Code of Criminal Procedure of 1963. The terms " '[c]ustody' and 'commitment' are both terms which have commonly been used interchangeably to characterize actual 'imprisonment,' or 'incarceration,' or 'confinement.' " *People v. Mikrut*, 117 Ill. App. 2d 444, 448 (1969). As defendant was not actually imprisoned, incarcerated, or confined by the DOC at the time that the proceedings in Sangamon County were terminated, defendant was not in the custody of the DOC, and the IDA does not apply. See *People v. Woodruff*, 90 Ill. App. 3d 236, 242 (1980), *rev'd on other grounds*, 88 Ill. 2d 10 (1981) (holding that a person is "committed" for purposes of the IDA "when he is in custody of, confined, or held by the [DOC]" so defendant, who was retained by the county after sentencing, was not committed to the DOC until he was actually sent there). Thus, defendant was not in the custody of, or committed to, the DOC after he was sentenced in Sangamon County.

¶ 16    We now address the issue of whether defendant was in the custody of Peoria County. When a defendant is in custody awaiting trial in one county and charges are pending against him in another county, the 120-day speedy trial period "does not begin to run until the proceedings in the first county end and defendant is held in custody by or for the second county on the subject charges." *People v. Wentlent*, 109 Ill. App. 3d 291, 297 (1982). A defendant is not in the custody "of the second county until the first proceedings have ended, even where a defendant is served with a warrant while incarcerated in the first county [citation], where a 'hold' or 'detainer' is lodged against him while incarcerated in the first county [citations], or where defendant is brought before the court in the second county, but then is returned again to the custody of the first county." *Id.* In order for a defendant to be in the custody of the second county upon termination of proceedings in the first county, defendant must be served with a warrant while

6

incarcerated in the first county. See *Wentlent*, 109 Ill. App. 3d at 297 (defendant was not in the custody of DuPage County after proceedings terminated in Cook County as he had not been served a warrant while incarcerated in Cook County); *People v. Karr*, 68 Ill. App. 3d 1040 (1979) (defendant was not in custody of the second county where defendant was only given an informal copy of the complaint and warrant while in custody in the first county).

¶ 17   Here, defendant was held awaiting trial in Sangamon County when he was served with a warrant for the instant case. The service of the Peoria County warrant on defendant effectuated his custody by Peoria County upon the termination of the Sangamon County proceedings. Stated another way, defendant was legally transferred to the custody of Peoria County once he was sentenced on the Sangamon County conviction. While we do not have the record for defendant's Sangamon County case, the existence of any pending posttrial motions would not change our conclusion. See *People v. Kerley*, 72 Ill. App. 3d 916 (1979) (after a DuPage County detainer warrant was served during the proceedings on a case in Cook County, defendant was in custody of DuPage County the day he entered his guilty plea and was sentenced); *People v. Gardner*, 105 Ill. App. 3d 103, 112 (1982) ("Since a Williamson County warrant was served on this defendant in Jackson County prior to the termination of the Jackson County proceedings, we are of the opinion that [defendant] was being held for Williamson County as soon as the Jackson County prosecution had concluded"). Accordingly, defendant was in custody of Peoria County after he was sentenced on June 11, 2013, and therefore, section 103-5(a) of the speedy trial statute applies, giving the State 120 days to bring defendant to trial. See 725 ILCS 5/103-5(a) (West 2012).

¶ 18   Having determined that defendant was in the custody of Peoria County after sentencing in Sangamon County, we next turn to the question of whether defendant's speedy trial rights

7

were violated after he was taken into custody. The 120-day speedy trial clock began as soon as defendant was in custody of Peoria County after sentencing in Sangamon County. See 725 ILCS 5/103-5(a) (West 2012); *People v. Peco*, 345 Ill. App. 3d 724, 731 (2004) (the 120-day term begins to run as soon as the defendant is taken into custody). No formal demand is necessary under this portion of the statute. See 725 ILCS 5/103-5(a) (West 2012); *People v. Castillo*, 372 Ill. App. 3d 11, 16 (2007). Over 120 days passed from the time defendant was taken into custody by Peoria County to the time his motion to dismiss was filed on October 24, 2013, and even more time passed before his trial ultimately took place on December 11, 2013. Defendant's speedy trial rights were violated so long as the delay was not attributable to him.

¶ 19        The defendant has the burden of proving that his right to a speedy trial has been violated and that he caused no delay. *People v. Patterson*, 392 Ill. App. 3d 461, 467 (2009). "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2012). " 'A defendant is considered to have occasioned a delay when he requests a continuance, agrees to a continuance, or when his actions otherwise cause or contribute to the delay.' " *Patterson*, 392 Ill. App. 3d at 467 (quoting *People v. Hatch*, 110 Ill. App. 3d 531, 537 (1982)).

¶ 20        After defendant's sentencing in Sangamon County, he remained in the Sangamon County jail for 31 days until he was transferred to the DOC. He was then brought to Peoria, was arraigned, and trial was set for a date within the speedy trial timeframe. Before the trial date, the State asked for a continuance. Defendant objected and told the court he was prepared for trial. The continuance was granted over defendant's objection. The new trial date that was set was outside of the 120-day speedy trial window. Prior to that trial, but after the 120-day window expired, defendant filed a motion to dismiss on speedy trial grounds, which was denied. We find

8

that defendant did not agree to the delay as he properly objected, and the State further does not contend that any delay was attributable to defendant. The delay was not occasioned by defendant, and, as the trial was outside of the 120-day limit, the trial court erred in denying defendant's motion to dismiss on speedy trial grounds.

¶ 21        Further, the speedy trial error "is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Belknap*, 2014 IL 117094, ¶ 48; *McKinney*, 2011 IL App (1st) 100317, ¶ 29. Defendant is therefore entitled to relief under the plain error doctrine.

¶ 22        Last, we note that defendant argues, in the alternative, that he is entitled to additional presentence custody credit. In light of the above, we need not consider this argument.

¶ 23                                CONCLUSION

¶ 24        The judgment of the circuit court of Peoria County is reversed and remanded with directions to the trial court to vacate its order denying the motion to dismiss and to enter judgment dismissing the charges.

¶ 25        Reversed and remanded with directions.